1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   BROOKE NOBLE,                              No.  1:14-cv-01963-DAD-EPG

12              Plaintiff,

13        v.                                    ORDER GRANTING DEFENDANTS'
                                                MOTIONS TO STRIKE OR DISMISS
14   WELLS FARGO BANK, N.A.; ROBERT             DEFENDANTS ROBERT LANDUCCI,
     LANDUCCI; SCOTT HARRIS; and                SCOTT HARRIS, AND MARLENE
15   MARLENE HUBBELL,                           HUBBELL
                                                (Doc. Nos. 43, 47, 57)
16              Defendants.
                                                ORDER DENYING PLAINTIFF'S MOTIONS
17                                              AND REQUESTS FOR LEAVE TO AMEND
                                                HER COMPLAINT TO ADD DEFENDANTS
18                                              (Doc. Nos. 61, 65, 66)

19                                              ORDER DENYING AS MOOT PLAINTIFF'S
                                                MOTION TO REMAND
20                                              (Doc. No. 71)

21                                              ORDER DENYING AS MOOT MOTIONS TO
                                                STRIKE OR DISMISS THE AMENDED
22                                              COMPLAINT FILED ON BEHALF OF
                                                DEFENDANTS LANDUCCI, HARRIS, AND
23                                              HUBBELL
                                                (Doc. Nos. 46, 55, 56, 58)
24
                                                ORDER DENYING MOTION TO STRIKE
25                                              OR DISMISS THE AMENDED COMPLAINT
                                                FILED ON BEHALF OF DEFENDANT
26                                              WELLS FARGO
                                                (Doc. No. 27)
27

28

                                           1

Several motions related to plaintiff's amended complaint (Doc. No. 25) are pending before the court.  Defendants Wells Fargo Bank, N.A. ("Wells Fargo"), Robert Landucci, Scott Harris, and Marlene Hubbell have all moved to strike plaintiff's amended complaint pursuant to California Code of Civil Procedure § 425.16 and, in the alternative, to dismiss the amended complaint.  (Doc. Nos. 27, 46, 55, 56, 58.)  Defendants Wells Fargo, Landucci, and Hubbell also move to strike or dismiss the newly named defendants as improperly added.  (Doc. Nos. 43, 47, 57.)  Relatedly and in opposition, plaintiff Brooke Noble moves the court for leave to amend her complaint to add these defendants and, accordingly, to remand this case to state court.  (Doc. Nos. 61, 65, 66, 71.)  Finally, defendant Landucci moves the court for an award of attorney's fees in connection with plaintiff's filing of her amended complaint.  (Doc. No. 53.)

A hearing on these motions was held on May 17, 2016.  Attorney Kamran Javandel appeared on behalf of defendant Wells Fargo.  Attorney Scott Quinlan appeared on behalf of defendant Landucci.  Defendant Scott Harris appeared on his own behalf.  Attorney Cameron Peyton appeared on behalf of defendant Hubbell.  Attorney Lenore Albert appeared on behalf of plaintiff Noble.  The court has considered the parties' briefs and oral arguments.  For the reasons stated below, the court grants the motions to strike or dismiss defendants Landucci, Harris, and Hubbell, and denies defendant Landucci's motion for attorney's fees.  The court also denies defendant Wells Fargo's motion to strike or dismiss the amended complaint.

## BACKGROUND

### A.    Factual background

According to plaintiff Brooke Noble's amended complaint, her mother, Marsha Kilgore, purchased a condominium in Fresno in 1990.  (Doc. No. 25 ¶ 9.)  The amended complaint also alleges the following.  On October 26, 2006, Ms. Kilgore agreed to refinance her mortgage with World Savings Bank.  Days later, she executed a notice of rescission and was reassured that the refinance agreement would be rescinded.  (*Id.* ¶¶ 12–13.)  At some later point in time, Kilgore attempted to modify her loan agreement with Wells Fargo, the successor in interest to World

/////

/////

2

1   Savings Bank.[1]  Wells Fargo refused to do so and proceeded to foreclose on Ms. Kilgore's loan.

2   (*Id.* ¶¶ 14–15.)

3        On December 19, 2012, Wells Fargo brought an unlawful detainer action against Ms.

4   Kilgore in state court.  (*Id.* ¶ 17.)  During those proceedings, Wells Fargo was represented by

5   attorneys Scott Harris and Marlene Hubbell, both named as defendants here.  Defendant Robert

6   Landucci, Wells Fargo's listing agent, also attended the proceedings.  (*Id.* ¶ 18.)  It was clear at

7   these proceedings that Ms. Kilgore, who attended with plaintiff, was not in good health; she

8   appeared in loose clothing and with a portable oxygen tank to help her breathe.  (*Id.* ¶¶ 19–20.)

9   Sometime in 2012, Kilgore had been diagnosed as suffering from chronic obstructive pulmonary

10  disease; she was also diagnosed with cancer.  (*Id.* ¶¶ 16, 21.)  Ms. Kilgore even sought a stay of

11  the eviction based on her health conditions.  (*Id.* ¶¶ 21–22.)

12       On May 6, 2013, at around 7:00 am, Wells Fargo executed an order to remove Ms.

13  Kilgore and plaintiff from the property with the help of the Fresno County Sheriff's Department.

14  (*Id.* ¶ 23.)  Upon arrival, the bank and Sheriff's deputies changed the locks and searched the

15  home.  (*Id.* ¶ 30.)  Seeing that nothing was packed, Wells Fargo gave plaintiff and Ms. Kilgore

16  one additional day to pack and leave.  (*Id.* ¶¶ 24, 31.)  The next day, on May 7, 2013, defendant

17  Landucci, acting as Wells Fargo's agent, returned at 10:00 am, without Sheriff's deputies, to

18  "force[] Ms. Kilgore to unplug her oxygen concentrator and leave the condominium in the

19  sweltering heat" with plaintiff Noble and their dogs.  (*Id.* ¶ 32.)

20       Over the next five months, Ms. Kilgore and plaintiff Noble struggled to find suitable

21  shelter.  During these summer months, the temperature in Fresno rose to at least 102 degrees.  In

22  the first four days after their eviction, they slept in their car, squatted at an abandoned property to

23  use a pool, and returned to their home before being kicked out again.  Ms. Kilgore's tank ran out

24  of oxygen after four days and she sought medical care.  They then stayed at a motel but were

25  unable to plug in the oxygen machine due to utility costs.  (*Id.* ¶¶ 35–41.)  Ms. Kilgore and her

26  representatives contacted Wells Fargo to work out a compromise that would allow her to continue

27  ————————————

28  [1]  Ms. Kilgore's attempt to modify the loan agreement appears to have occurred sometime between 2006 and 2012, though the specific timing is not alleged in the amended complaint.

1   staying in the house by paying her original mortgage amount, but Wells Fargo refused.  (*Id.* ¶ 42.)

2   She returned to the hospital in September 2013 and remained hospitalized for only four days

3   despite pleas to stay there longer due to her dependence on the oxygen concentrator.  (*Id.* ¶¶ 43–

4   46.)  Ms. Kilgore and her representatives again contacted Wells Fargo, but the bank refused to

5   make any accommodations.  (*Id.* ¶ 47.)  Ms. Kilgore returned to the hospital on October 9, 2013.

6   On October 16, 2013, she died due to respiratory failure.  (*Id.* ¶ 53.)

7   **B.      Procedural background**

8   Plaintiff commenced this action against Wells Fargo in the Fresno County Superior Court

9   on October 16, 2014.  Plaintiff's original complaint stated three causes of action:  wrongful death,

10  negligent infliction of emotional distress ("NIED"), and intentional infliction of emotional

11  distress ("IIED").  (*See* Doc. Nos. 1-1, 23.)  On December 10, 2014, Wells Fargo removed the

12  action to this court on diversity grounds.  (Doc. No. 1.)  On December 31, 2014, Wells Fargo

13  moved to dismiss the complaint for failure to state a claim.  (Doc. No. 12.)  On September 25,

14  2015, the court granted defendant's motion but with plaintiff also being granted leave to amend.

15  (Doc. No. 23.)  Plaintiff filed her amended complaint on October 15, 2015.  (Doc. No. 25.)

16  In her amended complaint, plaintiff alleges the same three causes of action as in her

17  original complaint, but names three new defendants, previously listed as Doe defendants.  Each

18  newly named defendant is alleged to be a resident of Fresno County, California.  (Doc. No. 25

19  ¶¶ 4–6.)  In her current wrongful death cause of action, plaintiff alleges, on behalf of her mother,

20  that all defendants negligently or willfully caused Ms. Kilgore's death by refusing to provide

21  accommodations or to otherwise assist Ms. Kilgore, knowing she was in failing health.  Plaintiff

22  alleges that based on their knowledge of Ms. Kilgore's condition, defendants owed Ms. Kilgore a

23  duty not to act in a manner that would result in her death.  Plaintiff's allegations against

24  defendants Harris and Hubbell arise from their conduct during the unlawful detainer proceedings

25  as well as their refusal to assist Ms. Kilgore despite knowing of her medical condition.  Plaintiff's

26  allegations against Wells Fargo and Landucci arise from the same alleged conduct, as well as

27  from the execution of the eviction on May 6 and 7, 2013.  Plaintiff's NIED cause of action alleges

28  that all defendants, through the wrongful death of Ms. Kilgore, negligently caused plaintiff

4

1    serious emotional distress because she was present at the time of the events alleged and aware of

2    defendants' underlying negligence.  Lastly, plaintiff's IIED cause of action alleges that all

3    defendants intentionally or recklessly acted to cause plaintiff her severe or extreme emotional

4    distress.

5         Beginning on November 2, 2015, defendants filed the several motions now pending

6    before the court and which are addressed in turn below.

7                        **JOINDER OF LANDUCCI, HARRIS, AND HUBBELL**

8         On September 25, 2015, the court granted defendant's motion to dismiss plaintiff's

9    original complaint, but "grant[ed] Plaintiff leave to amend in order to allege facts that may

10   support the elements of the claims for [wrongful death], IIED, and NIED."  (Doc. No. 23 at 13.)

11        In her amended complaint, plaintiff now names three California residents as defendants.

12   Defendants move to strike or dismiss these newly named defendants as improperly joined.  (Doc.

13   Nos. 43, 47, 57.)  Plaintiff urges the court to permit joinder of the newly named defendants under

14   Rules 15 and 20 of the Federal Rules of Civil Procedure because she amended her complaint

15   following a court order dismissing her original complaint.  That order, however, addressed only

16   the sufficiency of plaintiff's claims against Wells Fargo and did not consider or address proposed

17   joinder of additional defendants.  Because this is a removal case and plaintiff's proposed joinder

18   of new defendants would destroy subject matter jurisdiction, the removal statutes govern joinder

19   of parties here.

20        Section 1447(e) of title 28 of the United States Code provides that "[i]f after removal the

21   plaintiff seeks to join additional defendants whose joinder would destroy subject matter

22   jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State

23   court."  District courts have considerable discretion in permitting joinder under § 1447(e).  *See*

24   *Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 691 (9th Cir. 1998).  In determining whether a new

25   party may be properly joined, district courts in this circuit generally consider:

26        (1) whether the party sought to be joined is needed for just
          adjudication and would be joined under Federal Rule of Civil
          Procedure 19(a); (2) whether the statute of limitations would
27        prevent the filing of a new action against the new defendant should
          the court deny joinder; (3) whether there has been unexplained
28        delay in seeking the joinder; (4) whether the joinder is solely for the

purpose of defeating federal jurisdiction; and (5) whether the claim against the new party seems valid.

*Clinco v. Roberts*, 41 F. Supp. 2d 1080, 1082 (C.D. Cal. 1999).  *See also McGrath v. Home Depot USA, Inc.,* 298 F.R.D. 601, 607 (S.D. Cal. 2014) (recognizing as a sixth factor for consideration "whether denial of joinder will prejudice the plaintiff"); *Davis v. Tower Select Ins. Co.*, No. 12-cv-1593 KJM, 2013 WL 127724, at *2 (E.D. Cal. Jan. 9, 2013); *Hardin v. Wal-Mart Stores, Inc.*, 813 F. Supp. 2d 1167, 1173 (E.D. Cal. 2011).

## A.    Required Joinder under Rule 19(a)

Rule 19(a) provides that a person must be joined as a party to an action if

> (A)   in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B)   that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
> > (i) as a practical matter impair or impede the person's ability to protect the interest; or
> >
> > (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Here, plaintiff's allegations against the newly added defendants are predicated exclusively on their actions as employees or agents of Wells Fargo.  (Doc. No. 25 ¶¶ 4–6.)  Plaintiff does not allege these defendants acted independently or with an interest separate from their duties as agents of Wells Fargo.  Thus, disposition of plaintiff's causes of action would neither limit her ability to obtain complete relief nor implicate any interest in this action on the part of these newly named defendants.  In other words, if plaintiff prevails, she could fully recover damages from Wells Fargo without having to seek separate relief from defendants Landucci, Harris, and Hubbell.  Accordingly, this factor weighs against joinder.

## B.    Statute of Limitations

California Civil Procedure Code § 335.1 provides that causes of action for wrongful death, NIED, and IIED, must be brought within two years.  Here, plaintiff's wrongful death cause of action accrued on the date of Ms. Kilgore's death, October 16, 2013.  (ECF No. 1-1 at 5.)  For

1    NIED and IIED causes of action, the statute of limitations begins to run when the plaintiff suffers

2    severe emotional distress as a result of a defendant's conduct.  *Cantu v. Resolution Trust Corp.*, 4

3    Cal. App. 4th 857, 889 (1992).  In this case, plaintiff's NIED and IIED causes of action would

4    have also accrued at or near the time of Ms. Kilgore's death.  Consequently, should the court

5    deny joinder, the statute of limitations would likely bar plaintiff from filing a new and separate

6    action against defendants Landucci, Harris, and Hubbell.  Thus, this factor weighs slightly in

7    favor of joinder.

8    **C.       Unexplained Delay**

9         Plaintiff's addition of three newly named defendants occurred nearly one year after she

10   filed her original complaint in this action.  While plaintiff contends this amendment was made in

11   response to the court's order granting defendant Wells Fargo's first motion to dismiss, the

12   allegations raised in the amended complaint suggest plaintiff was aware of these defendants'

13   identities well before she commenced this action.  Plaintiff provides no further explanation as to

14   why these defendants' names were previously unavailable to her.  In the absence of such

15   justification, this factor weighs against joinder.

16   **D.       Motive for Joinder**

17        Plaintiff's motive for adding new defendants at this stage is cloudy at best.  Defendants

18   insist plaintiff's amendment is principally designed to attempt to destroy the diversity of the

19   parties in an effort to remand the action to state court.  Plaintiff simply denies this, instead

20   arguing that the additional defendants will prevent Wells Fargo from asserting an "empty chair"

21   defense at trial.  By excluding Landucci, Harris, and Hubbell from the suit, plaintiff contends,

22   Wells Fargo may attempt to evade liability or to reduce its damages by pointing a finger at the

23   absent defendants.  Plaintiff's argument is unavailing as such a defense is inapplicable here.  In

24   her amended complaint, plaintiff alleges that each of the newly named defendants acted as an

25   agent and at the direction of Wells Fargo.  Thus to the extent plaintiff proves that Landucci,

26   Harris, or Hubbell committed tortious acts within the scope of their agency or employment, Wells

27   Fargo would be liable for those acts.  *Perez v. Van Groningen & Sons, Inc.*, 41 Cal. 3d 962, 967

28   (1986).

The extent of plaintiff's delay in seeking joinder may also be probative of plaintiff's intent. While on the one hand, an unjustified delay in adding new defendants may infer an improper motive, the length of the delay in this instance weighs against finding that plaintiff's primary motive was to defeat federal jurisdiction. *See Clinco*, 41 F. Supp. 2d at 1083 (finding that plaintiff's amendment of the complaint, two days after removal, "was caused by the removal rather than an evolution of his case"). Here, plaintiff has moved to remand the case (Doc. No. 71) several months after amending her complaint and in light of defendants' motions to dismiss the newly named defendants. The court therefore cannot infer plaintiff's motive for the amendment from its timing alone.

Because it is unclear whether plaintiff was primarily motivated to defeat federal jurisdiction, this factor weighs neither for nor against allowing joinder.

**E.      Validity of the Claims Against the New Parties**

Finally, the court considers whether the claims against the new parties appear to have merit. *Clinco*, 41 F. Supp. 2d at 1083; *McGrath*, 298 F.R.D. at 607. Here, plaintiff's theories of liability as to defendant Landucci are relatively stronger, given his alleged personal involvement in evicting Ms. Kilgore and plaintiff Noble. As explained further below, such affirmative conduct could have given rise to a duty of care with respect to a negligence claim. However, because Landucci was allegedly acting as Wells Fargo's agent at all relevant times, his liability would be coextensive with that of Wells Fargo. In light of plaintiff's preexisting cause of action against Wells Fargo, this factor does not support joinder of defendant Landucci.

As to defendants Harris and Hubbell, plaintiff alleges they are liable due to their conduct in prosecuting the unlawful detainer action as well as their failure to act in response to Wells Fargo's decision to evict Ms. Kilgore and plaintiff. These theories of liability are much weaker. It is doubtful that defendants' liability for wrongful death, NIED, or IIED could result from their conduct during a separate litigation, and plaintiff provides few facts to support an inference that these defendants owed plaintiff and her mother a duty to act under the circumstances. Thus, this factor weighs against joinder of defendants Harris and Hubbell.

/////

8

Having considered the factors permitting joinder under § 1447(e), the court concludes on balance, joinder of the three newly named defendants is neither necessary nor appropriate at this time.  Accordingly, the court grants defendants' motions to strike or dismiss defendants Landucci, Harris, and Hubbell from this action.  (*See* Doc. Nos. 43, 47, 57.)[2]

## ROBERT LANDUCCI'S MOTION FOR ATTORNEY'S FEES AND COSTS

Landucci also moves for the imposition of sanctions against plaintiff pursuant to Rule 11 of the Federal Rules of Civil Procedure.  (Doc. No. 53.)  In relevant part, Rule 11 provides:

> **(b) Representations to the Court.** By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> > **(1)** it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
> >
> > **(2)** the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> * * *
>
> **(c) Sanctions.**
>
> > **(1) In General.**  If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation.

Fed. R. Civ. P. 11.

"Rule 11 is an extraordinary remedy, one to be exercised with extreme caution."  *In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431, 437 (9th Cir. 1996) (*quoting Operating Eng'rs*

---

[2]  Accordingly, the court also denies plaintiff's corresponding motions and requests for leave to amend her complaint to add these defendants (Doc. Nos. 61, 65, 66).  Because these individuals are dismissed and denial of joinder does not destroy this court's diversity jurisdiction, plaintiff's motion to remand (Doc. No. 71) is denied as moot.  Defendants Landucci, Harris, and Hubbell's motions to dismiss this action (Doc. Nos. 46, 55, 56, 58) are also denied as having been rendered moot.

1    *Pension Tr. v. A-C Co.*, 859 F.2d 1336, 1345 (9th Cir. 1988)).  "[T]he central purpose of Rule 11

2    is to deter baseless filings in district court and . . . streamline the administration and procedure of

3    the federal courts."  *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990).  When a court

4    examines a complaint for frivolousness under Rule 11, it must determine both (1) whether the

5    complaint is legally or factually baseless from an objective perspective, and (2) whether the

6    attorney conducted a reasonable and competent inquiry before signing it.  *Holgate v. Baldwin*,

7    425 F.3d 671, 676 (9th Cir. 2005).  A nonfrivolous complaint cannot be filed for an improper

8    purpose.  *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1362 (9th Cir. 1990) (citing

9    *Zaldivar v. City of Los Angeles*, 780 F.2d 823, 832 (9th Cir. 1986), *abrogated on other grounds*

10   *by Cooter & Gell*, 496 U.S. at 399–405).

11          Here, Mr. Landucci moves for the imposition of sanctions against plaintiff on grounds that

12   the amended complaint fails to comply with Rules 11(b)(1) and (2) because the allegations

13   against him were frivolous and pled for an improper purpose.  (Doc. No. 53 at 2–3.)  While the

14   court agrees that Mr. Landucci has been improperly joined at this stage in the litigation, that issue

15   was not so clear that plaintiff's attempt to include Mr. Landucci in her amended complaint was

16   objectively baseless, or that plaintiff's counsel was unreasonable in pursuing joinder.  Moreover,

17   as discussed above, plaintiff's motive for the attempted joinder is far from obvious.  Because the

18   court concludes the amended complaint is not frivolous, it declines to find that the amended

19   complaint was filed for an improper purpose under Rule 11.  Accordingly, Mr. Landucci's motion

20   for sanctions is denied.

21                          **WELLS FARGO'S MOTION TO STRIKE OR DISMISS**

22   **A.      Plaintiff's Motion to Strike Under California Code of Civil Procedure § 425.16**

23          As the sole remaining defendant, Wells Fargo first moves to strike the amended complaint

24   pursuant to California's anti-SLAPP statute, California Civil Procedure Code § 425.16.

25   California's anti-SLAPP statute provides:

26          A cause of action against a person arising from any act of that
            person in furtherance of the person's right of petition or free speech
27          under the United States Constitution or the California Constitution
            in connection with a public issue shall be subject to a special
28          motion to strike, unless the court determines that the plaintiff has

                                                    10

established that there is a probability that the plaintiff will prevail on the claim.

Cal. Civ. Proc. Code § 425.16(b)(1). *See also Manufactured Home Cmtys., Inc. v. County of San Diego*, 655 F.3d 1171, 1176 (9th Cir. 2011). California's anti-SLAPP law is aimed at curtailing civil actions designed to deter private citizens from exercising their rights of free speech. *U.S. ex rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963, 970 (9th Cir. 1999). The Ninth Circuit permits anti-SLAPP motions in federal court directed at state law claims such as those asserted by plaintiff in this action. *Id.* at 973; *see also Verizon Delaware, Inc. v. Covad Commc'ns Co.*, 377 F.3d 1081, 1091 (9th Cir. 2004) ("We have previously confirmed that defendants sued in federal courts can bring anti-SLAPP motions to strike state law claims and are entitled to attorneys' fees and costs when they prevail.").

Evaluating a motion made pursuant to the anti-SLAPP statute "requires a two-part analysis:  (1) the defendant must make a *prima facie* showing that the suit arises 'from an act in furtherance of the defendant's rights of petition or free speech'; and (2) once the defendant makes this showing, 'the burden shifts to the plaintiff to demonstrate a probability of prevailing on the challenged claims.'" *Roberts v. McAfee, Inc.*, 660 F.3d 1156, 1163 (9th Cir. 2011) (quoting *Mindys Cosmetics, Inc. v. Dakar*, 611 F.3d 590, 595 (9th Cir. 2010)). *See also Equilon Enters. v. Consumer Cause, Inc.*, 29 Cal. 4th 53, 67 (2002).

An "act in furtherance of a person's right of petition or free speech" includes:

> (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law;
>
> (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law;
>
> (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest;
>
> (4) or any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.

1  *Mindys*, 611 F.3d at 595–96 (quoting Cal. Civ. Proc. Code § 425.16(e)).  "'In the anti-SLAPP

2  context, the critical consideration is whether the cause of action is based on the defendant's

3  protected free speech or petitioning activity.'"  *In re Episcopal Church Cases*, 45 Cal. 4th 467,

4  477–78 (2009) (quoting *Navellier v. Sletten*, 29 Cal. 4th 82, 89 (2002)).  *See also City of Cotati v.*

5  *Cashman*, 29 Cal. 4th 69, 78 (2002) ("[T]he critical point is whether the plaintiff's cause of action

6  itself was based on an act in furtherance of the defendant's right of petition or free speech.").

7         Defendant argues that all of plaintiff's causes of action arise from Wells Fargo's

8  prosecution of its unlawful detainer action as well as its action to enforce the resulting judgment

9  against plaintiff and her mother—conduct protected by § 425.16(e)(1).  (Doc. No. 27 at 4–5.)

10  This characterization, however, is not accurate.  Plaintiff primarily alleges that Ms. Kilgore's

11  death in 2013 resulted from Wells Fargo's wrongful or negligent conduct occurring outside of

12  any litigation.  Specifically, plaintiff alleges Wells Fargo officials knew of Ms. Kilgore's health

13  conditions, refused to provide reasonable accommodations, and nonetheless participated in the

14  eviction of plaintiff and Ms. Kilgore.  (*See* Doc. No. 25 ¶¶ 32–53.)  It is this alleged conduct,

15  separate from participation in or statements made concerning Ms. Kilgore's unlawful detainer

16  action or other judicial proceedings, that forms the basis for plaintiff's causes of action.

17  Accordingly, defendant cannot make a *prima facie* showing that the instant action arises from an

18  act "in furtherance of the person's right of petition or free speech."  Because Wells Fargo's

19  alleged conduct in this regard is not covered by § 425.16, California's anti-SLAPP statute is

20  inapplicable here.  Defendant's motion to strike the amended complaint is therefore denied.

21  **B.      Motion to Dismiss Under Rule 12(b)(6)**

22         In the alternative, defendant moves to dismiss each of plaintiff's three causes of action—

23  wrongful death, NIED, and IIED—for failure to state a claim pursuant to Rule 12(b)(6) of the

24  Federal Rules of Civil Procedure.  The court addresses each cause of action in turn.

25         1.      Legal Standard

26         The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal

27  sufficiency of the complaint.  *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir.

28  1983).  "Dismissal can be based on the lack of a cognizable legal theory or the absence of

12

1    sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901

2    F.2d 696, 699 (9th Cir. 1990).  A plaintiff is required to allege "enough facts to state a claim to

3    relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A

4    claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

5    the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v.*

6    *Iqbal*, 556 U.S. 662, 678 (2009).

7            In determining whether a complaint states a claim on which relief may be granted, the

8    court accepts as true the allegations in the complaint and construes the allegations in the light

9    most favorable to the plaintiff. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Love v.*

10   *United States*, 915 F.2d 1242, 1245 (9th Cir. 1989).  However, the court need not assume the truth

11   of legal conclusions cast in the form of factual allegations. *United States ex rel. Chunie v.*

12   *Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986).  While Rule 8(a) does not require detailed

13   factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me

14   accusation." *Iqbal*, 556 U.S. at 678.  A pleading is insufficient if it offers mere "labels and

15   conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S.

16   at 555.  *See also Iqbal*, 556 U.S. at 676 ("Threadbare recitals of the elements of a cause of action,

17   supported by mere conclusory statements, do not suffice.").  Moreover, it is inappropriate to

18   assume that the plaintiff "can prove facts which it has not alleged or that the defendants have

19   violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal.,*

20   *Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).  In ruling on a motion to

21   dismiss brought pursuant to Rule 12(b)(6), the court is permitted to consider material which is

22   properly submitted as part of the complaint, documents that are not physically attached to the

23   complaint if their authenticity is not contested and the plaintiffs' complaint necessarily relies on

24   them, and matters of public record. *Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th Cir.

25   2001).

26           2.    <u>Wrongful Death</u>

27           A wrongful death cause of action requires (1) a wrongful act or negligence, (2) which

28   causes, (3) the death of another person. *Norgart v. Upjohn Co.*, 21 Cal. 4th 383, 390 (1999).

1   Defendant challenges the sufficiency of plaintiff's pleading on several grounds.

2   First, defendant argues that according to public records—(1) a writ of possession, dated

3   April 9, 2013 (Doc. No. 12-3 at 24–25); and (2) a return on writ of possession (Doc. No. 12-3 at

4   27–28)—Sheriff's deputies placed Wells Fargo in quiet and peaceful possession of the Kilgore

5   residence on May 6, 2013.  In light of these documents, defendant urges this court to disregard

6   any allegation that Wells Fargo or its agents were responsible for the conduct of the lockout.

7   (Doc. No. 27 at 7.)  Thus, defendant argues, the first requirement of plaintiff's wrongful death

8   cause of action cannot be met.  However, taking the allegations of the amended complaint as true,

9   as this court must on a motion to dismiss, plaintiff's claims are not subject to dismissal on the

10  basis argued by defendant.  Plaintiff plainly alleges in her amended complaint that Wells Fargo

11  was both present and an active participant in the eviction process over the course of two days.

12  After determining that "nothing was packed" on May 6, Mr. Landucci allegedly returned May 7

13  to force plaintiff and her mother from the premises.  (Doc. No. 25 ¶¶ 28–32.)  Such conduct, if

14  true, is not wholly inconsistent with statements made by the Sheriff's Department.  Plaintiff's

15  allegations suggest that despite Sheriff's deputies' eviction attempt, she and her mother remained

16  on the property with Wells Fargo's permission until the following day, when Mr. Landucci

17  returned, unaccompanied by law enforcement.  Assuming these facts to be true, the court cannot

18  conclude that Wells Fargo's conduct constituted the "independent conduct of law enforcement"

19  as defendant now characterizes it.  (*See* Doc. No. 27 at 7.)  The Sheriff's Department records

20  purportedly relied upon by defendants are insufficient to negate the facts alleged in the amended

21  complaint.

22  The parties also dispute whether and to what extent defendant owed a duty of care to

23  plaintiff's mother, Ms. Kilgore.  In at least two instances, the amended complaint alleges facts to

24  support the existence of a duty of care.  First, Mr. Landucci appeared at the property with law

25  enforcement officers on May 6, 2013 to evict plaintiff and her mother.  Regardless of whether

26  such an eviction was legally effectuated, plaintiff alleges that Wells Fargo gave plaintiff "one

27  more day to get packed up."  (Doc. No. 25 ¶ 31.)  The following morning, Mr. Landucci returned

28  to the property and "forced Ms. Kilgore to unplug her oxygen concentrator."  (*Id.* ¶ 32.)  Such

14

1  facts would make it plausible that by inviting and permitting Ms. Kilgore to remain on the

2  property, Wells Fargo assumed a duty to use ordinary care in its conduct toward her.  Second,

3  plaintiff alleges that throughout the relevant time period, Wells Fargo implemented a publicly

4  known policy of providing displaced homeowners with relocation assistance.  (*See id.* ¶¶ 23, 29,

5  34.)  Assuming this to be true, it is plausible that Wells Fargo created a relationship with Ms.

6  Kilgore such that she qualified for and was entitled to some level of assistance for relocation.

7  Plaintiff also alleges that Wells Fargo was aware of Ms. Kilgore's ongoing health problems

8  before the eviction and that her dependence on an oxygen concentrator was readily apparent when

9  Mr. Landucci arrived at the property, without the assistance of law enforcement on May 7.  (*See*

10  *id.* ¶¶ 19, 21, 32.)  Thus, in at least these instances, plaintiff alleges sufficient facts supporting a

11  reasonable inference that defendant Wells Fargo owed a duty of care to Ms. Kilgore.  *See, e.g.*,

12  *Cabral v. Ralphs Grocery Co.*, 51 Cal. 4th 764, 771 (2011) ("The general rule in California is that

13  '[e]veryone is responsible . . . for an injury occasioned to another by his or her want of ordinary

14  care or skill in the management of his or her property or person . . . .'") (quoting Cal. Civ. Code

15  § 1714(a)); *Parsons v. Crown Disposal Co.*, 15 Cal. 4th 456, 472 (1997) ("As a general rule, each

16  person has a duty to use ordinary care and 'is liable for injuries caused by his failure to exercise

17  reasonable care in the circumstances. . . .'") (quoting *Rowland v. Christian*, 69 Cal. 2d 108, 112

18  (1968)); *see also Delgado v. Trax Bar & Grill*, 36 Cal. 4th 224, 248–49 (2005) (noting that one

19  who "undertakes to provide protective services to another" may be found to have a duty of care in

20  performance of that undertaking).

21        Finally, defendant contends the amended complaint fails to allege sufficient facts to create

22  an inference that Wells Fargo's alleged breach of its duty of care was the proximate cause of Ms.

23  Kilgore's death.  As the California Supreme Court has stated,

24        Proximate cause involves *two* elements.  One is *cause in fact*.  An
      act is a cause in fact if it is a necessary antecedent of an event.
25        Whether defendant's negligence was a cause in fact of plaintiff's
      damage . . . is a factual question for the jury to resolve.
26

27        By contrast, the second element focuses on public policy
      considerations.  Because the purported causes of an event may be
28        traced back to the dawn of humanity, the law has imposed
      additional limitations on liability other than simple causality.  These

15

> additional limitations are related not only to the degree of connection between the conduct and the injury, but also with public policy. Thus, proximate cause is ordinarily concerned, not with the fact of causation, but with the various considerations of policy that limit an actor's responsibility for the consequences of his conduct.

*Ferguson v. Lieff, Cabraser, Heimann & Bernstein*, 30 Cal. 4th 1037, 1045 (2003) (emphases in original) (citations and internal quotations omitted). Traditionally, to prove cause in fact, a plaintiff must allege and demonstrate that but for the alleged negligence, the harm would not have occurred. *Viner v. Sweet*, 30 Cal. 4th 1232, 1239 (2003). However, where concurrent independent causes exist, California applies the alternative "substantial factor" test. *Id.* at 1239–40. Under the "substantial factor" test, when multiple forces are operating concurrently and each is sufficient by itself to bring about the harm, the alleged negligence may be found to be a substantial factor in bringing the harm about. *Id.* at 1240.

Here, plaintiff alleges that in the five months following her eviction, Ms. Kilgore was forced to find shelter from the intense summer heat, was unable to keep her oxygen machine running, and was required to return to the hospital on several occasions. (Doc. No. 25 ¶¶ 35–53.) Referring to these allegations, defendant points to a number of potential concurrent causes for Ms. Kilgore's death, including her preexisting illness, displacement from a motel and the hospital, and Ms. Kilgore's refusal to be resuscitated days before her death. (Doc. No. 27 at 8.) While these subsequent events could have worsened or independently caused Ms. Kilgore's death, it is also plausible that they resulted as the natural consequences of Wells Fargo's alleged conduct. Without determining whether these were concurrent *independent* causes, the court finds that under either test, plaintiff has alleged sufficient facts in her amended complaint from which a reasonable inference can be drawn that the alleged negligent conduct was the proximate cause of Ms. Kilgore's death.

Accordingly, the court concludes plaintiff has alleged facts sufficient to state a claim for wrongful death and therefore denies defendant's motion as to this cause of action.

3.    Negligent Infliction of Emotional Distress

There is no independent tort of NIED under California law. *Burgess v. Superior Court*, 2 Cal. 4th 1064, 1072 (1992) ("We have repeatedly recognized that '[t]he negligent causing of

1    emotional distress is not an independent tort, but the tort of negligence.'" (quoting *Marlene F. v.*

2    *Affiliated Psychiatric Med. Clinic, Inc.*, 48 Cal. 3d 583, 588 (1989))).  NIED is instead a subset of

3    negligence that extends the ability to recover damages to indirect victims who, while not suffering

4    physical injury as the result of a tortfeasor's acts, nonetheless suffer severe emotional distress.

5    *See, e.g., Dillon v. Legg*, 68 Cal. 2d 728, 747–48 (1968) (allowing mother to pursue damages for

6    emotional trauma resulting from witnessing the death of her child).  A cause of action for NIED is

7    typically asserted through one of two theories of recovery:  the "bystander" theory and the "direct

8    victim" theory.  *Burgess*, 2 Cal. 4th at 1071.  To recover under the bystander theory, which

9    plaintiff appears to allege here, plaintiff must allege and demonstrate she "(1) is closely related to

10   the injury victim; (2) is present at the scene of the injury-producing event at the time it occurs and

11   is then aware that it is causing injury to the victim and, (3) as a result suffers emotional distress

12   beyond that which would be anticipated in a disinterested witness."  *Thing v. La Chusa*, 48 Cal.

13   3d 644, 647 (1989).

14          Plaintiff's cause of action for NIED is derivative of her wrongful death cause of action.

15   (*See* Doc. No. 25 87–104.)  Thus, to the extent plaintiff sufficiently pleads a claim for wrongful

16   death based on a negligence theory, plaintiff must additionally plead that she was closely related

17   to Ms. Kilgore, that she was present at the injury-producing event, and that she suffered severe

18   emotional distress.  Plaintiff has done so in her amended complaint.  Specifically, plaintiff alleges

19   she was present during her mother's eviction and witnessed her mother's deterioration from that

20   event through the time of her mother's death.  (*Id.* ¶¶ 80, 82.)  Plaintiff allegedly suffered severe

21   emotional distress as a result of this experience and "continues to experience despair,

22   hopelessness, headaches, insomnia, guilt, paranoia, nightmares, stomachaches (ulcers), stress,

23   anxiety, depression, panic attacks, humiliation, grief, mental anguish and suffering."  (*Id.* ¶¶ 82–

24   84.)  Accordingly, plaintiff has alleged facts sufficient to state a cognizable claim for NIED.

25          4.       Intentional Infliction of Emotional Distress

26          The elements of a claim for IIED under California law are:  "'(1) extreme and outrageous

27   conduct by the defendant with the intention of causing, or reckless disregard of the probability of

28   causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and

17

1    (3) actual and proximate causation of the emotional distress by the defendant's outrageous

2    conduct.'"  *Lawler v. Montblanc N. Am., LLC*, 704 F.3d 1235, 1245 (9th Cir. 2013) (quoting

3    *Hughes v. Pair*, 46 Cal. 4th 1035, 1050 (2009)).   The conduct must be "so extreme as to exceed

4    all bounds of that usually tolerated in a civilized community."  *Hughes*, 46 Cal. 4th at 1051

5    (internal citations and quotations omitted).

6         As described above, plaintiff alleges that after Sherriff's deputies arrived and changed the

7    locks to the property on May 6, 2013, Wells Fargo gave plaintiff and her mother "one more day

8    to get packed up."  (Doc. No. 25 ¶ 31.)   The following morning, Mr. Landucci, acting as

9    defendant's agent, returned without the assistance of law enforcement and "forced Ms. Kilgore to

10   unplug her oxygen concentrator."  (*Id.* ¶ 32.)  Moreover, Mr. Landucci forced plaintiff to carry

11   out her mother's oxygen machine and escorted them to the alley knowing there would be no

12   access to electricity.  (*Id.* ¶¶ 81, 100.)   Plaintiff's allegations suggest this was not an ordinary

13   eviction; after permitting plaintiff and Ms. Kilgore to stay on the property, defendant and Mr.

14   Landucci were aware of Ms. Kilgore's medical and financial condition and knowingly forced her

15   from the property without providing reasonable accommodations.  These factual allegations are

16   sufficient to create an inference that defendant's conduct was outrageous.  *See Hughes*, 46 Cal.

17   4th at 1051; *Cervantez v. J. C. Penney Co.*, 24 Cal. 3d 579, 593 (1979).  Furthermore, as the court

18   concludes above, plaintiff has sufficiently alleged that she suffered severe emotional distress as a

19   result of defendant's conduct.  Accordingly, plaintiff pleads facts sufficient to state a cognizable

20   claim for IIED.

21        Defendant Wells Fargo's motion to strike or dismiss the amended complaint is denied.

22                                    **ORDER**

23   For the reasons set forth above,

24   1.  Defendants' motions to strike or dismiss Robert Landucci, Scott Harris, and Marlene

25        Hubbell (Doc. Nos. 43, 47, 57) are granted;

26   2.  Plaintiff's motions and requests for leave to amend her complaint to add these

27        defendants (Doc. Nos. 61, 65, 66) are denied;

28   3.  Plaintiff's motion to remand (Doc. No. 71) is denied as moot;

4.   The motions to strike or dismiss the amended complaint brought on behalf of defendants Landucci, Harris, and Hubbell (Doc. Nos. 46, 55, 56, 58) are denied as moot;

5.   Robert Landucci, Scott Harris, and Marlene Hubbell are dismissed from this action;

6.   Defendant Wells Fargo's motion to strike or dismiss the amended complaint (Doc. No. 27) is denied; and

7.   The matter is referred to the assigned magistrate judge for purposes of scheduling further proceedings in this action.

IT IS SO ORDERED.

Dated:   **July 1, 2016**

_____
UNITED STATES DISTRICT JUDGE

19