UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BROOKE NOBLE,<br><br>           Plaintiff,<br><br>      vs.<br><br>WELLS FARGO BANK, N.A., *et al.*,<br><br>           Defendants. | Case No. 1:14-cv-01963-DAD-EPG<br><br>ORDER DENYING<br>MOTION FOR PROTECTIVE ORDER<br><br>(ECF No. 119)<br><br>ORDER DENYING<br>MOTION TO STRIKE<br><br>(ECF No. 121) |

**I.     BACKGROUND**

Plaintiff initiated this action on December 10, 2014. (ECF No. 1) A First Amended Complaint was filed on October 15, 2015. (ECF No. 25.) After a ruling on the Defendants' motions to strike and/or dismiss on July 5, 2016, three claims remain against Defendant Wells Fargo Bank, N.A. ("Wells Fargo"). (ECF No. 86.) Specifically, this case is proceeding on Plaintiff's wrongful death, negligent infliction of emotional distress and intentional infliction of emotional distress claims against Wells Fargo. (*Id*.) Plaintiff's allegations stem from the manner that Wells Fargo evicted Plaintiff's mother, Marsha Kilgore, who was on oxygen and died shortly after the eviction due to respiratory failure.

The Court held a hearing on the motions to compel on January 12, 2017. (ECF No. 110.) Plaintiff's counsel Lenore Albert and Defendant's counsel Kamran Javandel

telephonically appeared on behalf of their clients. (*Id.*)  For the reasons stated on the record and in a follow-up order issued January 7, 2016 (ECF Nos. 111-12), the motions to compel (ECF Nos. 107, 019) were granted, in part, and denied, in part.

      A Wells Fargo request for entry of a confidential protective order was denied at the January 12, 2017, hearing for failure abide by the specific requirements of Local Rule 141.1(c). (ECF No. 111 at 4.)  However, the Court granted leave for Wells Fargo to file a proposed confidential protective order that complies with the Local Rule. (*Id.*)

      At the January 12, 2017, hearing and in the January 13, 2017, order, the issue of whether or not Wells Fargo's policies and procedures are confidential and should only be produced pursuant to a confidential protective order was discussed. (ECF No. 111 at 7.)  The Court permitted further briefing on the issue as follows:

> Wells Fargo may submit a brief of no more than 5 pages by January 25, 2017. Plaintiff may submit a response by January 31, 2017. To the extent that the parties need to file confidential information to fully explain their position, those exhibits may be filed separately and under seal.

(*Id.*)  To facilitate a tight discovery schedule, the Court permitted temporary designation of the policies and procedures as confidential until the issue could be fully resolved. (*Id.*)

      On January 25, 2017, Wells Fargo filed a motion for protective order, notice of hearing, and memorandum of points and authorities, as well as two supporting affidavits. (ECF Nos. 119 – 119-2.)  The pages 3-7 of the memorandum of points and authorities contained argument as to why Wells Fargo's policies and procedures are confidential and should only be produced pursuant to a confidential protective order. (ECF No. 119 at 3-7.)  The motion also included a request for sanctions requesting the Court to order Plaintiff to pay for Wells Fargo's expenses in making the motion for protective order, including attorney fees. (*Id.* at 7.)  Wells Fargo also filed a proposed protective order on January 25, 2017. (ECF No. 120.)

      In response to Wells Fargo's January 25, 2017, filings, Plaintiff filed, on the following day, a motion to strike the motion for protective order. (ECF No. 121.)  On January 30, 2017, Plaintiff filed a self-titled supplemental brief on whether the policies and procedures are confidential. (ECF Nos. 122 – 122-1.)

## II. PLAINTIFF'S MOTION TO STRIKE

Plaintiff requests that the Court strike Wells Fargo's January 25, 2017, filings for failure to follow the Court's briefing directives. (ECF No. 121 at 2-4.) Specifically, Plaintiff argues that Wells Fargo did not comply with Court's page limitation of 5 pages; instead, Wells Fargo filed a 7-page brief. (*Id*. at 2.) Next, Plaintiff argues that Wells Fargo improperly requested sanctions and "focused [the motion] on a request for sanctions." (*Id*. at 4.)

The motion to strike (ECF No. 121) is denied. The argument submitted to the Court in the motion for protective order was timely (filed on January 25, 2017) and does not exceed 5 pages. (ECF No. 119 at 3-7.) Therefore, Wells Fargo complied with the Court's briefing directives. As discussed in Part C, below, the Court agrees that Wells Fargo should not have included a request for sanctions in the motion for protective order. The Court will deny the request on the merits. Accordingly, the portion of the motion to strike requesting that the request for sanctions be stricken is denied as moot.

## III. WELLS FARGO REQUEST FOR PROTECTIVE ORDER

Wells Fargo requests entry of a protective order to protect from public disclosure 19 different procedures concerning the eviction of defaulting borrowers. (ECF No. 119 at 5.) The Court previously found that all policies and procedures regarding evictions in place from January 1, 2012 to December 31, 2013, were discoverable under Rule 26(b)(1) of the Federal Rules of Civil Procedure, and ordered Wells Fargo to produce the documents. (ECF No. 111 at 6.) Defendant has thus far provided those procedures to Plaintiff for use in the litigation, but subject to confidentiality restrictions.

### A. Legal Standards

"In the federal judicial system trial and pretrial proceedings are ordinarily to be conducted in public." *Olympic Ref. Co. v. Carter*, 332 F.2d 260, 264 (9th Cir. 1964) ("The purpose of the federal discovery rules, as pointed out in *Hickman v. Taylor*, 329 U.S. 495, 501, 67 S.Ct. 385, 91 L.Ed. 451, is to force a full disclosure.") "As a general rule, the public is permitted 'access to litigation documents and information produced during discovery.'" *In re Roman Catholic Archbishop of Portland in Oregon*, 661 F.3d 417, 424 (9th Cir. 2011) (quoting

3

*Phillips v. Gen. Motors Corp.*, 307 F.3d 1206, 1210 (9th Cir.2002) and citing *San Jose Mercury News, Inc. v. U.S. Dist. Court*, 187 F.3d 1096, 1103 (9th Cir.1999) ("It is well-established that the fruits of pretrial discovery are, in the absence of a court order to the contrary, presumptively public.")).

As an exception to the general rule of public access to pretrial litigation discovery, a party may move for a court order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including … requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." Fed. R. Civ. P. 26(c)(1)(G).

The burden is on the moving party to demonstrate "good cause" for the entry of such an order. *See* Fed. R. Civ. P. 26(c)(1); *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1130 (9th Cir. 2003) ("A party asserting good cause bears the burden, for each particular document it seeks to protect, of showing that specific prejudice or harm will result if no protective order is granted." (citations omitted)).

"A party asserting good cause bears the burden, for each particular document it seeks to protect, of showing that specific prejudice or harm will result if no protective order is granted." *Foltz*, 331 F.3d at 1130–31 (citing *Phillips v. Gen. Motors*, 307 F.3d 1206, 1210-11 (9th Cir. 2002)). Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, will not suffice. *Id*. (citations omitted). Instead, the moving party must provide specific demonstrations of fact, supported where possible by affidavits and concrete examples, rather than broad, conclusory allegations of potential harm. *Id*. at 1130-31 (citations omitted); *see also Culligan v. Yamaha Motor Corp., USA*, 110 F.R.D. 122, 125 (S.D.N.Y. 1986) ("[W]hen a party asserts that discovery will cause competitive injury because of the revelation of trade secrets, it cannot generally rely upon conclusory statements, but must present evidence of specific damage likely to result from disclosure." (citations omitted)).

### B. The Parties' Positions

In its motion for protective order, Wells Fargo argues that good cause for entry of protective order exists to protect its policies and procedures and procedures concerning

4

evictions because the documents at issue constitute a trade secret or other confidential research, development, or commercial information" within the meaning of Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure. (ECF No. 119 at 5.)

Wells Fargo states the eviction procedures were developed "at significant effort and expense," allow Wells Fargo to collect on debts efficiently, "provide a competitive advantage against competitors who have not gone to the time and expense of developing such procedures," and that "Wells Fargo takes all reasonable steps to safeguard this information and protect against its disclosure." (*Id.*) In support of these statements, Wells Fargo provides the declaration of Nathan Miller, a Wells Fargo Vice President of Loan Documentation in the Real Estate Owned department. (ECF No. 119-1 ¶¶ 2-4.)

Next, Wells Fargo asserts that disclosure the relevant eviction procedures would cause Wells Fargo significant harm. (ECF No. 119 at 6.) Wells Fargo argues that if its competitors obtained the procedures, they could "implement the procedures Wells Fargo developed at significant expense, without the competitors incurring any expenses, developing any expertise or experience within the field, or undergoing any independent legal review and revision, thus putting Wells Fargo at a significant competitive disadvantage." (*Id.*) Mr. Miller again provides an attestation to this statement in his declaration. (ECF No. 119-1 ¶ 5.)

Plaintiff's response challenges the procedure Defendant used to bring this issue to the attention of the Court, and also argues that "policies and procedures followed by national banks are in place for the purpose of provide safe and sound banking to the protection of the consumer/public and that federal agencies routinely inspect their procedures." (ECF No. 121 at 4).

Plaintiff also filed a supplement in opposition to the motion for protective order. (ECF No. 123). Plaintiff argues that the policies and procedures at issue are subject to federal agency review, and thus should not be considered confidential. In support, Plaintiff submitted the Declaration of Walter Hacket, who purports to be "an expert in all areas of banking associated with the origination, documentation and servicing of loans including mortgage loans." (ECF No. 122-1 at 2.) Mr. Hacket states in part:

> [I]t is my opinion both based upon my over 25 years in the financial services industry and my knowledge of the Federal Rules of Evidence that the claims of Wells offered to justify its refusal to produce the evidence demanded are without merit or basis in fact. Indeed, a review of documents issued by the Office of the Comptroller of the Currency ("OCC") particularly its documents relative to the examination of large banks (of which Wells is one) make clear that the requested materials would have to be made available on demand to the OCC, a public, federal agency. Wells misrepresents the function of the OCC which is charged with, primarily, ensuring the safety and soundness of the financial institutions for which it is responsible.
>
> Further, I am aware of no legal privilege that does or could attach to documents required to be presented upon demand to the OCC as a matter of ensuring the safety and soundness of America's financial services institutions. The OCC documents which I reviewed as part of my analysis of Wells responses to discovery are several hundred pages long however they can be found online at . . . .
>
> Wells Fargo Bank's objections are wholly baseless and, indeed, are grossly misleading and constitute a misrepresentation of fact to the Court. The documents requested are in most cases documents relevant to third party systems as Wells Fargo Bank uses virtually no systems that were entirely developed in-house. Additionally, even if any systems were developed in house the very notion that the manuals would constitute some form of attorneyclient communication or attorney work product would also necessarily imply that they could be kept from Wells Fargo Bank's federal regulators, an implication that is patently false.

(ECF No. 122-1 at 3-4).  Mr. Hackett includes links to OCC regulations describing its role in supervision, and also attached certain Wells Fargo policies and procedures that it deemed not confidential including its Foreclosure Attorney Procedure Manual.

### C.  Application of Law to Defendant's Requested Protective Order

Wells Fargo has not met its burden for entry of the protective order.  The Court is not convinced that the procedures constitute a trade secret or other confidential research, development, or commercial information" within the meaning of Rule 26(c)(1)(G).

Wells Fargo argues that the eviction procedures constitute trade secrets under the definition that a "trade secret may consist of any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it." *Restatement of Torts* § 757, cmt. b;

6

*endorsed* by In re Elec. Arts, Inc., 298 F. App'x 568, 569–70 (9th Cir. 2008).  However, Wells Fargo does not describe how its eviction procedures give it a competitive advantage over other eviction procedures.  For example, Wells Fargo does not describe how it makes more money by using its eviction procedures in contrast to a competitor's procedures, or how it would be at a competitive disadvantage if every bank used the same eviction procedures.  Indeed, it is difficult to envision what a more competitive eviction procedure means in this context.

Rather than arguing that the procedures themselves provide a competitive advantage over banks with other eviction procedures, Wells Fargo argues that other competitors who have not yet written any such procedures could avoid the work of compiling such procedures themselves.  This argument appears based on the unwarranted speculation that competitors have no such eviction procedures already.  Moreover, if such an argument justified confidentiality protection, it could be used to keep confidential any internal procedure without regard to whether such a procedure conferred any competitive advantage to the party. *See Travelers Property Cas. Co. of America v. Centex Homes,* 2013 WL 707918, at *1 (N.D. Cal. Feb. 26, 2013) ("Plaintiff argues that the Guidelines are trade secrets, regardless of whether they are outdated, because they were never disclosed to Plaintiff's competitors. This argument conflates trade secrets with ordinary secrets. Information does not have value to a competitor merely because the competitor does not have access to it.") (internal citations omitted); *Braack v. Home Depot U.S.A., Inc.,* 2007 WL 2156371, at *4 (W.D. Wash. Jul. 23, 2007) ("Home Depot has made a generalized claim that disclosure of its policies and procedures will result in harm if the public obtains access to them. That harm could apply to all businesses that develop policies and procedures. If the court were to issue a protective order based upon such a generalized showing, the general principle of open access that underlies the judicial system would be eviscerated.").

Furthermore, the Court finds the statements within the declaration far too  broad and conclusory to establish good cause for protection under Rule 26(c)(1)(G).  For example, Wells Fargo does not provide any detail or specific example in paragraph three of declaration as to the effort and expense invested to develop the procedures.  *See GoDaddy.com LLC v. RPost*

*Commc'ns Ltd.,* 2016 WL 1158851, at *4 (D. Ariz. Mar. 24, 2016), *on reconsideration in part,* 2016 WL 1274120 (D. Ariz. Mar. 31, 2016) ("[T]he Court is not persuaded that the 'very sensitive nature' of GoDaddy's marketing survey or generic financial information constitutes a compelling reason that justifies redaction. Aside from its blanket statement that the survey and financial data constitutes 'very sensitive' information which, if revealed publicly, could potentially cause harm, GoDaddy has not demonstrated what 'specific prejudice or harm will result' if the information is not redacted."); *Hodges v. Apple Inc.,* 2013 WL 6070408, at *2 (N.D. Cal. Nov. 18, 2013) ("An unsupported assertion of 'unfair advantage' to competitors without explaining 'how a competitor would use th[e] information to obtain an unfair advantage' is insufficient."); *Ingram v. Pacific Gas & Electric Company,* 2013 WL 5340697, at *3 (N.D. Cal. Sep. 24, 2013) ("It is not apparent, and PG & E does not explain, how public disclosure of its discipline guidelines could disadvantage PG & E competitively. PG & E's 'conclusory arguments' and 'blanket' assertions that Exhibit A is 'confidential and proprietary' are insufficient to overcome the presumption against sealing.").

Wells Fargo cites to an unreported case from the Northern District of West Virginia in support of its argument that "Court's routinely hold that such harms justify issuance of a protective order allowing discovery but prohibiting public disclosure." (ECF No. 119, at p. 6), *citing Sheets v.Caliber Home Loans, Inc.*, 2015 U.S. Dist. LEXIS 160616, *6, *18 (N.D. W. Va. Dec. 1, 2015). Setting aside the fact that the case has no precedential value to this Court, it is also distinguishable in that the Court rested its decision on the fact that the policies and procedures at issue were "'the results of years of labor' in fine-tuning its own interpretations of the WVCCPA, they are economically valuable." *Sheets*, 2015 U.S. Dist. LEXIS at *6. Moreover, defendants had demonstrated that "if Defendant's competitors obtain its internal policies and procedures, they will be able to collect upon debts more profitably and competitively, causing harm to Defendant." *Id.* Wells Fargo has made no such particularized showing in this case.

Next, the fact that Wells Fargo does not ordinarily release the document to third-parties, as indicated in paragraph four of the declaration, does not by itself render the policies "trade

secret or other confidential research, development, or commercial information" within the meaning of Rule 26(c)(1)(G). By that rationale, any internal document, such as an email between two employees, would garner such protection, which is clearly not the intent of Rule 26(c).

Wells Fargo also argues that the Court should keep the procedures confidential because "such disclosure could lead to legal expense for Wells Fargo in defending against mertiless [sic], opportunistic litigation is would not otherwise face." (ECF No. 119, at p. 6:15-17). Wells Fargo does not explain or support this statement. Nor is there any support in the Federal Rules or case law for keeping a document confidential because disclosure could result in litigation. To the extent Wells Fargo is arguing that disclosure of its own procedures would cause litigation by revealing that Wells Fargo violates its own procedures, such a consequence is a legitimate consequence of the public nature of litigation. After all, Plaintiff is seeking the procedures to challenge Wells Fargo's compliance with them in her mother's eviction, and the issue will certainly be part of any public trial against Wells Fargo. Put another way, it would be wholly improper and against the goals of a public court system to issue a protective order in order to shield a party from public knowledge of improper behavior. *See GoDaddy.com*, 2016 WL 1158851, at *4 (refusing to redact party's proposed royalty rate because "Mr. Smith's proposed royalty rate is the element of his report that GoDaddy predominantly challenges as unreliable under *Daubert*, thereby ensuring public interest in the information, . . . GoDaddy is undoubtedly aware that the royalty rate will be brought to the jury's attention at trial—in unsealed format. For these reasons, the proposed royalty rate does not overcome the strong presumption of public access . . . .).

In conclusion, the Court has previously determined that the procedures are discoverable under Rule 26(b)(1), and Wells Fargo has not met its burden for entry of a protective order Rule 26(c). Accordingly, the motion for protective order (ECF No. 119) is denied.

The Court acknowledges that Wells Fargo may want to exercise its right to object to this order pursuant to Rule 72 of the Federal Rules of Civil Procedure. Therefore, the documents at issue shall remain designated as confidential until the expiration of the time to

object under Rule 72 (i.e. if no objection is filed) or until the objection is finally resolved by the District Judge.

### IV. WELLS FARGO'S REQUEST FOR SANCTIONS

Wells Fargo requests sanctions in the form of a Court to order Plaintiff to pay for Wells Fargo's expenses in making the motion for protective order, including attorney fees. (ECF No. 119 at 7.) Wells Fargo argues that "Rule 37(a)(5)(A) and (C) provide that a court must award a party's expenses, including attorney fees, in making a successful motion to compel or for protective order…" (*Id.*)

The request for sanctions is without merit and procedurally improper. Rule 37(a)(5)(A) provides that a successful movant for a motion to compel may receive expenses in limited circumstances. *See* Fed. R. Civ. P. 37(a)(5)(A). Rule 37(a)(5)(B)-(C) then speaks to when a Rule 26(c) protective order may be entered if the motion to compel is denied in whole or in part. *See* Fed. R. Civ. P. 37(a)(5)(B)-(C). Nowhere does Rule 37(a)(5) does provide that a successful movant for entry of protective order can receive expenses, including attorney fees, as Wells Fargo suggests. Thus, the request for sanctions is denied.

### V. CONCLUSION

Wells Fargo's motion for protective order (ECF No. 119) is DENIED.

Plaintiff's motion to strike (ECF No. 121) is DENIED.

The noticed hearing dates for these motions are VACATED.

The documents at issue shall remain designated as confidential until the expiration of the time to object under Rule 72 (i.e. if no objection is filed) or until the objection is finally resolved by the District Judge.

IT IS SO ORDERED.

Dated: **February 7, 2017**                    /s/ Erica P. Grosjean
                                               UNITED STATES MAGISTRATE JUDGE