UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BROOKE NOBLE,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>WELLS FARGO BANK, N.A.,<br><br>　　　　Defendant. | No. 1:14-cv-01963-DAD-EPG<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br>(Doc. No. 154) |

This matter comes before the court on defendant's motion for summary judgment, which was heard on June 20, 2017. Attorneys Marshall Wallace and Kamran Javandel appeared at the hearing on behalf of defendant Wells Fargo Bank, N.A. ("Wells Fargo"). Attorney Lenore Albert appeared on behalf of plaintiff Brooke Noble. The court has considered the parties' briefs and oral arguments. For the reasons stated below, the court will grant defendant's motion for summary judgment.

/////
/////
/////
/////

1

# BACKGROUND

**A.  Allegations of the Amended Complaint and Evidence on Summary Judgment[1]**

In 1990, plaintiff's mother, Marsha Kilgore, purchased a condominium, located at 728 East Magill Avenue, in Fresno, California.  (FAC ¶ 9 (Doc. No. 25); *see also* DUMF ¶ 1.)  On December 19, 2012, Wells Fargo, the eventual mortgage creditor, commenced an unlawful detainer action against Ms. Kilgore in state court.  (DUMF ¶ 8.)  During those proceedings, Ms. Kilgore asserted that she was on oxygen for survival and that her eviction would have life-threatening consequences.  (DUMF ¶ 9.)  Plaintiff alleges it was clear then that Ms. Kilgore was not in good health; she appeared in loose clothing and with a portable oxygen tank to help her breathe.  (FAC ¶¶ 19–20.)  On April 3, 2013, the state court granted summary judgment in favor of Wells Fargo in the unlawful detainer action, and on April 9, 2013, the state court issued a writ of possession against plaintiff and Ms. Kilgore.  (DUMF ¶¶ 10–11.)  On April 26, 2013, the Fresno County Sheriff's Department served on plaintiff and Ms. Kilgore a five-day notice to vacate the property.  (DUMF ¶ 12.)

On May 6, 2013, at least one Sheriff's deputy, accompanied by Robert Landucci, a real estate broker acting as an agent of defendant Wells Fargo, arrived at the condominium to effectuate a lockout of plaintiff and Ms. Kilgore.  (*See* DUMF ¶¶ 18–19; PDF ¶¶ 11, 13; Noble Dep. 82:20–25; Landucci Decl. ¶ 4.)  After surveying the property, and seeing that nothing was packed, the deputy and Mr. Landucci agreed to grant plaintiff and Ms. Kilgore an additional twenty-four hours to vacate the property.  (DUMF ¶ 19; *see also* Noble Dep. 83:1–7; Landucci Decl. ¶ 5.)  The following day, May 7, 2013, Mr. Landucci returned to the property alone, unaccompanied by law enforcement.  (Noble Dep. 87:7–11; Landucci Decl. ¶ 6.)  Mr. Landucci informed plaintiff and Ms. Kilgore they were required to vacate the property, but he agreed to

---

[1]  These facts are principally derived from plaintiff's amended complaint (Doc. No. 25) ("FAC"); defendant's statement of undisputed material fact (Doc. Nos. 154-1, 163, 166-1) ("DUMF"); plaintiffs' statement of disputed facts, (Doc. Nos. 160-2, 166-2) ("PDF"); the deposition of Brooke Noble, dated February 1, 2017 (Doc. No. 154-4, Ex. A) ("Noble Dep."); and the declaration of Robert Landucci (Doc. No. 154-5) ("Landucci Decl.").  Plaintiff's amended complaint was filed by her counsel, is not verified and therefore cannot be considered as a declaration for purposes of summary judgment.

allow them to temporarily store some belongings in the garage. (DUMF ¶ 22; Noble Dep. 85:14–86:8, 88:14–21.) Plaintiff and Ms. Kilgore stored their belongings in the garage and left the property that day without significant incident. (*See* Noble Dep. 88:19–21; Landucci Decl. ¶¶ 6–7.)[2]

Over the next five months, plaintiff and Ms. Kilgore struggled to find suitable shelter. During this time period, the two lived on the streets and at hotels, and Ms. Kilgore was hospitalized several times due to a lack of adequate oxygen. (PDF ¶ 47; *see also* DUMF ¶¶ 29–30, 45.) In September 2013, plaintiff and Ms. Kilgore had to leave a hotel due to the cost of electricity necessary for Ms. Kilgore's oxygen concentrator. (PDF ¶ 48.) That same month, counsel for Ms. Kilgore informed Wells Fargo of Ms. Kilgore's health condition and unsuccessfully attempted to reverse Ms. Kilgore's eviction. (PDF ¶ 49.) Also in September, Ms. Kilgore was hospitalized and discharged after four days, despite pleas to stay longer due to her dependence on an oxygen concentrator. (DUMF ¶¶ 43–44.)

On October 9, 2013, Ms. Kilgore returned to the hospital. (DUMF ¶ 46.) According to her death certificate, Ms. Kilgore died on October 16, 2013, due to acute chronic hypercapnic respiratory failure, a lung mass, and chronic obstructive pulmonary disease. (DUMF ¶ 48.)

**B.  Procedural background**

Plaintiff Brooke Noble commenced this action against defendant Wells Fargo in Fresno County Superior Court on October 16, 2014. On December 10, 2014, Wells Fargo removed the action to this federal court on diversity grounds. (Doc. No. 1.) Plaintiff filed her amended complaint on October 15, 2015. (Doc. No. 25.) Therein, plaintiff states three causes of action:

---

[2] The parties present somewhat differing accounts of when Mr. Landucci asked plaintiff and Ms. Kilgore to leave. Mr. Landucci states that on May 7, 2013, he returned to the property alone, and after talking to plaintiff and Ms. Kilgore, he granted them additional time—until May 9, 2013—within which to leave. (Landucci Decl. ¶ 6.) Then, on May 9, 2013, Mr. Landucci returned, and after consulting with Wells Fargo, allowed plaintiff and Ms. Kilgore to store their belongings in the garage. (Landucci Decl. ¶ 7.) Plaintiff's counsel nonetheless argues that Mr. Landucci "forced" plaintiff and Ms. Kilgore to leave the condominium. (Doc. No. 160 at 4.) However, there is no dispute that on his final visit, Mr. Landucci did not physically touch plaintiff or Ms. Kilgore, did not personally unplug or ask Ms. Kilgore to unplug her oxygen tank, and did not verbally threaten plaintiff or Ms. Kilgore. (*See* DUMF ¶¶ 25–26; Noble Dep. 85:14–86:19; Landucci Decl. ¶¶ 9–10.)

3

wrongful death, negligent infliction of emotional distress ("NIED"), and intentional infliction of emotional distress ("IIED"). On July 1, 2016, this court denied Wells Fargo's motion to dismiss the amended complaint. (Doc. No. 86.) Specifically, the court concluded that, as alleged in plaintiff's amended complaint, Mr. Landucci's conduct in early May 2013 and Wells Fargo's policy of providing relocation assistance to displaced homeowners may give rise to a plausible inference that defendant Wells Fargo owed a duty of care to Ms. Kilgore. (*See id.* at 14–15.)[3]

### LEGAL STANDARD

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

In summary judgment practice, the moving party "initially bears the burden of proving the absence of a genuine issue of material fact." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B). When the non-moving party bears the burden of proof at trial, as plaintiff does here, "the moving party need only prove that there is an absence of evidence to support the non-moving party's case." *Oracle Corp.*, 627 F.3d at 387 (citing *Celotex*, 477 U.S. at 325); *see also* Fed. R. Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing

---

[3] Specifically, the court denied the motion to dismiss due to the allegations of the amended complaint that defendant Wells Fargo's representative, Mr. Landucci, ultimately forced plaintiff and Ms. Kilgore to vacate the premises and forced Ms. Kilgore to unplug her oxygen concentrator with full knowledge of her health issues and dependence on an oxygen concentrator for survival, thus plausibly alleging facts sufficient for a reasonable inference that defendant Wells Fargo owed a duty of care to Ms. Kilgore. (*Id.*) As discussed herein, the actual evidence presented by plaintiff in opposing summary judgment falls short of supporting such claims.

4

sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322–23. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment . . . is satisfied." *Id.* at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits or admissible discovery material in support of its contention that the dispute exists. *See* Fed. R. Civ. P. 56(c)(1); *Matsushita*, 475 U.S. at 586 n.11; *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002) ("A trial court can only consider admissible evidence in ruling on a motion for summary judgment."). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the non-moving party. *See Anderson*, 477 U.S. at 250; *Wool v. Tandem Computs., Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv.*, 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita*, 475 U.S. at 587 (citations omitted); *see also Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000) ("A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact" precluding summary

judgment); *Summers v. A. Teichert & Son, Inc.*, 127 F.3d 1150, 1152 (9th Cir. 1997) ("a mere scintilla of evidence will not be sufficient to defeat a properly supported motion for summary judgment; rather, the nonmoving party must introduce some significant probative evidence tending to support the complaint").

"In evaluating the evidence to determine whether there is a genuine issue of fact," the court draws "all inferences supported by the evidence in favor of the non-moving party." *Walls v. Cent. Contra Costa Cty. Transit Auth.*, 653 F.3d 963, 966 (9th Cir. 2011). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted); *see also Nelson v. Pima Cmty. College*, 83 F.3d 1075, 1081 (9th Cir. 1996) ("The mere existence of a scintilla of evidence is not enough to create a genuine issue of material fact in order to preclude summary judgment.") (internal quotation marks omitted).

## DISCUSSION

**A.     Summary Judgment Based on Privilege and Preclusion**

Defendant first moves for summary judgment based on the belief that plaintiff's claims are predicated on the theory that Ms. Kilgore's eviction itself constitutes the alleged act of negligence or outrageous conduct. However, as this court previously held, plaintiff's claims of wrongful death, NIED, and IIED are based on either Mr. Landucci's conduct in May 2013 or Wells Fargo's refusal to provide relocation assistance to plaintiff and Ms. Kilgore—actions that took place separate and apart from the state court's April 2013 issuance of a writ of possession. (*See* Doc. No. 86 at 12, 14–15.) Defendant's participation in or statements made concerning Ms. Kilgore's unlawful detainer action or other judicial proceedings, do not form the basis for plaintiff's causes of action. (*See id.* at 12.)

/////

In moving for summary judgment, defendant also argues that plaintiff's claims are barred by California's so-called litigation privilege. That privilege, codified at California Civil Code § 47(b) "applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that has some connection or logical relation to the action." *Action Apartment Ass'n, Inc. v. City of Santa Monica*, 41 Cal. 4th 1232, 1241 (2007) (quoting *Silberg v. Anderson*, 50 Cal. 3d 205, 212 (1990)). The court concludes, however, that the litigation privilege is inapplicable to plaintiff's claims in this case. On summary judgment, defendant has failed to establish how Mr. Landucci's eviction-related conduct (1) was performed in the course of judicial proceedings, or (2) was intended to "achieve the objects of" the underlying litigation—namely resolution of the question of ownership or possession of the property. Defendant's efforts to *enforce* a state court judgment, which is the subject of this suit, are separate and distinct from the underlying litigation itself and are therefore not covered by the litigation privilege. Moreover, there is no evidence before this court on summary judgment suggesting that Wells Fargo's refusal to provide relocation assistance was related in any way to prior judicial proceedings between the parties. Accordingly, defendant's motion for summary judgment is also denied to the extent it is premised on this basis.

Separately, defendant moves for summary judgment contending that plaintiff's claims are precluded based on the parties' prior litigation. Under California law, res judicata, or claim preclusion, bars a second lawsuit between the same parties on the same cause of action. *People v. Barragan*, 32 Cal. 4th 236, 252 (2004); *Mycogen Corp. v. Monsanto Co.*, 28 Cal. 4th 888, 896 (2002). Collateral estoppel, or issue preclusion, bars the relitigation of issues that were actually litigated and determined in the first action. *Barragan*, 32 Cal. 4th at 252–53; *Lucido v. Superior Court*, 51 Cal. 3d 335, 341 (1990). Here, on summary judgment, defendant has also failed to identify what specific claims or issues now before this court have been previously decided on the merits by the state court. As a result, defendant's motion for summary judgment must be denied to the extent it is based on preclusion grounds.

/////

**B.     Summary Judgment as to Plaintiff's Actual Claims**

Defendant Wells Fargo principally moves for summary judgment as to the merits of each of plaintiff's claims. As described below, while the circumstances giving rise to this action are undoubtedly tragic, it is plaintiff who bears the burden of proof at trial, and based upon the evidence presented on summary judgment, the court concludes defendant has established that there is an absence of evidence supporting plaintiff's claims. *See Oracle Corp.*, 627 F.3d at 387.

1.     Wrongful Death and Negligent Infliction of Emotional Distress

In order to establish either her wrongful death or NIED claims, plaintiff must establish that defendant Wells Fargo owed Ms. Kilgore a duty of care, breached that duty, and the breach caused her harm. *See Alvarez v. BAC Home Loans Servicing, L.P.*, 228 Cal. App. 4th 941, 944 (2014) (identifying elements of negligence); *Burgess v. Superior Court*, 2 Cal. 4th 1064, 1072 (1992) (recognizing NIED cause of action as derivative of the tort of negligence). "[A]s a general rule, a financial institution owes no duty of care to a borrower." *Nymark v. Heart Fed. Sav. & Loan Ass'n*, 231 Cal. App. 3d 1089, 1096 (1991). However, the question whether a bank is negligent "is not subject to black-and-white analysis—and not easily decided on the 'general rule.'" *Jolley v. Chase Home Fin., LLC*, 213 Cal. App. 4th 872, 898 (2013).

On summary judgment, defendant argues it owed Ms. Kilgore no duty of care. This court previously concluded that the allegations of plaintiff's amended complaint could give rise to an inference that Wells Fargo assumed a duty of care toward Ms. Kilgore in one of several ways: (1) Mr. Landucci's invitation and assurance that Ms. Kilgore could remain on the property after an initial attempt to evict her; (2) Mr. Landucci's personal involvement in subsequently "forc[ing]" plaintiff and Ms. Kilgore from the premises; and (3) Wells Fargo's policy of providing relocation assistance, which may have created a special relationship between the bank and Ms. Kilgore. (Doc. No. 86 at 14–15.)

Here, viewing the evidence before the court on summary judgment in the light most favorable to plaintiff, the court concludes that defendant's conduct in each instance did not give rise to a duty of care toward Ms. Kilgore. First, there is no dispute that Mr. Landucci on at least one occasion, on May 6, 2013, granted plaintiff and Ms. Kilgore an additional twenty-four hours

to pack their belongings and vacate the premises. The fact that he did so, however, does not mean Mr. Landucci assumed a duty of care toward Ms. Kilgore, and plaintiff points to no evidence on summary judgment suggesting, let alone establishing, that defendant Wells Fargo otherwise undertook any responsibility over Ms. Kilgore's health, despite its knowledge of her condition. Second, there is no evidence before this court on summary judgment that supports any claim that Mr. Landucci was personally involved in physically removing Ms. Kilgore from the premises. Indeed, it is now undisputed on summary judgment that Mr. Landucci did not touch Ms. Kilgore or involve himself in unplugging Ms. Kilgore's oxygen concentrator, contrary to what the allegations of plaintiff's amended complaint might have suggested. As plaintiff herself testified at deposition, Mr. Landucci simply told plaintiff and Ms. Kilgore that it was time to leave. Ms. Kilgore stored some of her belongings in the garage with Mr. Landucci's permission and left the premises on her own volition. Third, while there is no dispute that defendant Wells Fargo had a relocation assistance program, plaintiffs have not come forward with any evidence on summary judgment that (i) Ms. Kilgore expressly sought such assistance during the appropriate time frame, or (ii) defendant Wells Fargo affirmatively made any assurance or promise that it would provide such assistance, such that Ms. Kilgore could have reasonably relied on defendant's conduct in that regard.

In sum, in light of the evidence now before the court on summary judgment no rational trier of fact could find for plaintiff. Because there is no genuine issue for trial, plaintiff cannot defeat defendant's summary judgment motion with respect to her claims for wrongful death and NIED, based on Mr. Landucci's conduct or Wells Fargo's failure to provide relocation assistance. *See Matsushita*, 475 U.S. at 587.[4] Accordingly, in the absence of any evidence of facts giving rise to a duty of care on the part of Wells Fargo, defendant's motion for summary judgment will be granted with respect to plaintiff's wrongful death and NIED claims.

/////

---

[4] To the extent plaintiff continues to attempt to rely on the theory that the eviction itself somehow constitutes negligence, plaintiff has not offered any authority—and this court finds none—to support such a contention.

2. <u>Intentional Infliction of Emotional Distress</u>

The elements of a claim for IIED under California law are: "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Lawler v. Montblanc N. Am., LLC*, 704 F.3d 1235, 1245 (9th Cir. 2013) (quoting *Hughes v. Pair*, 46 Cal. 4th 1035, 1050 (2009)). The conduct must be "so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Hughes*, 46 Cal. 4th at 1051 (internal citations and quotations omitted).

As described above, the undisputed evidence on summary judgment establishes that Mr. Landucci's conduct toward Ms. Kilgore was not nearly as extreme or extraordinary as the allegations of plaintiff's amended complaint might have suggested. Indeed, plaintiff now concedes on summary judgment that Mr. Landucci did not touch Ms. Kilgore or involve himself in removing Ms. Kilgore's oxygen concentrator from the premises. Moreover, there is no evidence before the court that Mr. Landucci used any physical force to evict plaintiff and Ms. Kilgore; to the contrary, it is undisputed on summary judgment that he simply stated that it was time to leave and permitted plaintiff and Ms. Kilgore to store some of their belongings in the garage. It is also undisputed on summary judgment that Ms. Kilgore then willingly left the premises. Viewing this undisputed evidence in the light most favorable to plaintiff, no reasonable jury could conclude that Mr. Landucci's actions amounted to extreme and outrageous conduct. Likewise, based on this evidence, no jury could find that Wells Fargo's alleged failure to provide relocation assistance could constitute the basis for liability under an IIED claim. *See Matsushita*, 475 U.S. at 587. Accordingly, defendant's motion for summary judgment must be granted with respect to plaintiff's IIED claim as well.

**CONCLUSION**

For the reasons set forth above,

1. Defendant's motion for summary judgment (Doc. No. 154) is granted;

/////

2. The Clerk of the Court is directed to enter judgment in defendant's favor as to plaintiff's claims for wrongful death, NIED, and IIED; and

3. The Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

Dated: __**August 9, 2017**__

                                                  */s/ Dale A. Drozd*
                                            UNITED STATES DISTRICT JUDGE